The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing and in the Pre-Trial Agreement executed by the parties on September 10, 1993, as
STIPULATIONS
1. At the time of plaintiff's contracting of the alleged occupational disease giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer Burlington Industries from February 29, 1958 through March 19, 1982.
3. Liberty Mutual Insurance Company was the carrier on the risk for Burlington Industries for the period from February 2, 1958 through September 30, 1979. Thereafter, American Motorists Insurance Company was on the risk for Burlington Industries from October 1, 1979 through March 19, 1982.
4. An employer-employee relationship existed between plaintiff and defendant-employer Parkdale Mills.
5. Traveler's Insurance Company was the carrier on the risk for Parkdale Mills for the period January 1, 1982 through January 1, 1983.
6. Plaintiff's average weekly wage at Burlington Industries was $290.76.
* * * * * * * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner with minor modifications to Finding of Fact Number 13, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff was born on August 18, 1929. He has a fourth grade education and can only read and write a little. His only significant work experience is in textiles.
2. Plaintiff first went to work in cotton textiles when he was about 16 years of age at the Cora Mills where he worked from 1945 to 1958 running and doffing twisters. During this period, Cora Mills ran cotton and the mill environment was dusty.
3. Thereafter, plaintiff went to work in Burlington Industries' Phoenix Mill where he worked in both twisting and spinning as a doffer. In 1973, he began overhauling in the Opening, Carding, Spinning and Twisting Departments. Cotton was processed during his employment at Burlington Industries' Phoenix Mill with this environment also being dusty.
4. Plaintiff left Parkdale Mills to work at McBess Industries where he also overhauled spinning frames in the Spinning Room. Plaintiff testified that McBess Industries ran only synthetics, and he did not work around cotton.
5. Plaintiff worked at Parkdale Mills in 1982 with his total pay being $6,633.38. He earned at the rate of $5.00 an hour and during some weeks he worked as many as six and seven days. Plaintiff estimated that he worked approximately six months at Parkdale Mills in 1982.
6. Plaintiff left Parkdale Mills to work at McBess Industries where he also overhauled spinning frames in the Spinning Room. However, this mill ran only synthetics and there were no dust problems.
7. Plaintiff began smoking at the age of 14, and smoked approximately one pack per day until he quit smoking in 1984.
8. On September 12, 1977, while plaintiff was in the employ of Burlington Industries, plaintiff was seen for a pulmonary evaluation by Dr. T. Reginald Harris in Shelby, North Carolina. At that time, plaintiff advised Dr. Harris that he first noticed respiratory difficulties approximately one year earlier. At the time of that evaluation, Dr. Harris reviewed the pulmonary function studies obtained at work from 1971 through 1977.
9. Dr. Harris saw plaintiff again for additional pulmonary evaluation on March 31, 1982.
10. Plaintiff was seen on January 16, 1992 by Dr. David E. Shanks in Charlotte, North Carolina.
11. During plaintiff's employment with defendant employer, he experienced exposure to cotton dust and was an increased risk of developing certain types of chronic obstructive pulmonary disease, and of augmenting, aggravating, or accelerating other chronic obstructive pulmonary diseases which are due to factors not associated with cotton textile employment, than are members of the general public.
12. Although plaintiff has worked in textiles with exposure to cotton dust, he does not have a history of reactivity to the work environment.
13. Plaintiff worked in the cotton textile industry for a period of approximately 30 years before reporting the onset of any respiratory problem. Plaintiff did not report any history of Monday-morning syndrome, the presence of which suggests reactivity to cotton dust and the presence of which would have been important to Dr. Harris in arriving at a diagnosis of byssinosis, particularly with an individual who has a significant smoking history.
14. Plaintiff does not have the byssinosis syndrome.
15. Plaintiff does not have a pattern or history of findings of reactivity to cotton dust. Although plaintiff has mild chronic obstructive pulmonary disease, emphysema and chronic bronchitis, plaintiff's exposure to cotton dust was not a significant contributing factor nor a significant causal factor in their development. Plaintiff does not have byssinosis.
* * * * * * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff has no disease and no disability related to causes and conditions which are characteristic of, and peculiar to, the textile industry in which he worked. N.C.G.S. 97-53(13). Plaintiff is, therefore, entitled to no compensation under the North Carolina Workers' Compensation Act. N.C.G.S. 97-52; N.C.G.S. 97-53.
2. Much of plaintiff's appeal centers on the fact that Dr. Shanks, a panel physician to whom the Commission referred plaintiff, was not given greater weight than Dr. Harris or was somehow ignored by the Deputy Commissioner. The undersigned have reviewed the record as a whole, including the depositions of both Dr. Harris and Dr. Shanks, and have likewise come to the conclusion that the opinions of Dr. Harris are more credible and convincing and are thus to be given greater weight. Finally, it is noted that the Industrial Commission has the duty and authority to resolve conflicts in the evidence, and the conflicts need not be resolved in favor of the claimant. Cauble v. Macke Co.,78 N.C. App. 793, 338 S.E.2d 320 (1986). The fact that Dr. Shanks is a panel physician does not automatically dictate that his opinion be accorded greater weight. Both physicians are very experienced and qualified to give their opinions on the subject.
Further, there is no requirement by law that the undersigned must state in detail every thought process and reasoning that went into ultimately finding one doctor's opinion more convincing than another.
3. Finally, plaintiff has argued that the Deputy Commissioner somehow set up a faulty standard of proof by noting plaintiff's lack of Monday morning syndrome. This is not the case, however. Rather, the Deputy Commissioner and now the undersigned are merely noting the importance of the lack of the Monday morning syndrome to Dr. Harris in arriving at his expert opinion that plaintiff does not have byssinosis. The undersigned do not presume to diagnose plaintiff's condition and instead must rely on what the competent and convincing medical expert feels is relevant.
* * * * * * * * * * * * * * * * * *
Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the 19th day of July, 1996.
 S/ ____________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ J. RANDOLPH WARD COMMISSIONER
S/ ______________________ MARY MOORE HOAG DEPUTY COMMISSIONER
JHB/nwm 07/11/96