I respectfully dissent from the majority Opinion and Award reversing the Deputy Commissioner's denial of this claim which was based on plaintiff's lack of credibility and insufficient medical evidence regarding causation.
Although the Workers' Compensation Act vests the Full Commission with authority to review a Deputy Commissioner's credibility findings, even the North Carolina Court of Appeals acknowledges "that the hearing officer is the best judge of credibility of witnesses because he is a firsthand observer of witnesses whose testimony he must weigh and accept or reject."Pollard v. Krispy Waffle, 63 N.C. App. 354, 308 S.E.2d 762
(1983). Therefore, I am of the opinion that Commissioners sitting as the Full Commission should exercise great restraint when tempted to replace the evaluation of the deputy, who was actually present to observe the witnesses, with the opinion of the Commissioner, who has reviewed only a cold record and the brief arguments of the party or their counsel.
Plaintiff has failed to meet her burden of proof that she sustained an injury by accident or specific traumatic incident arising out of and in the scope of her employment with defendant-employer on 9 February 1994. Plaintiff was pregnant at the time of the alleged incident and has a history of back pain, including back pain in the same locations of which she now complains. Furthermore, there were no eyewitnesses to the alleged incident, therefore, plaintiff's credibility is of utmost importance in this case.
Plaintiff's lack of credibility is manifested by her delay in reporting any incident at work to her physicians, the length of time between treatment in North Carolina and subsequent treatment in Louisiana, the lack of objective findings and the fact that plaintiff engaged in activities inconsistent with her testimony that she was able to do little more than stay in bed or accomplish minimal house-hold tasks. Although plaintiff was examined by Wilkerson Obstetrics and Gynecology on 10 February 1994, one day after the alleged incident, and complained of back pain, she did not attribute her pain to any particular incident at work. Thereafter, plaintiff was seen at Raleigh Orthopedic Clinic and again did not attribute her pain to any incident at work. Consequently, plaintiff was diagnosed with "low back pain secondary to pregnancy". Plaintiff's first report of any incident at work was not until a month later when she reported to Dr. Albright that it was possible that she aggravated her pre-existing back problems while lifting boxes at work. After delivering a healthy baby on 29 April 1994, plaintiff suffered from post-partum depression and continued back pain. Plaintiff's last treatment for back pain before leaving North Carolina for Louisiana was on 9 May 1994. At this time a MRI, CT scan and nerve conduction studies were within normal limits.
In addition, plaintiff returned to work in May 1994 and assumed her regular duties without complaints of pain or physical problems doing her job until August of 1994 when she left her job with defendant-employer to go to Louisiana for the reasons that she could not care for her children and do her job and also because she was worried about alimony payments if her husband moved to Louisiana and she did not. Not only did plaintiff not have any difficulties with her job with defendant-employer, in July 1994 she actually applied for and accepted a similar job with a cosmetics supply company, B D, in Louisiana which sold the same lines of products as defendant. She did not indicate to her prospective employer that she had any physical problems. After working for B D for approximately one month, during which time she made no complaints, plaintiff quit the first week in October without giving any notice. Thereafter, on 5 October 1994, plaintiff filed a workers' compensation claim for injuries to herself and to her baby and saw a physician complaining of back pain for the first time since June 1994 in North Carolina. After 25 February 1995, a year after the alleged incident, Dr. Domingue who is the only doctor that has related plaintiff's condition to her job with defendant-employer, became plaintiff's primary treating physician.
In addition to the lack of credibility of plaintiff in this case, there is insufficient medical evidence of record to prove by the greater weight that plaintiff's alleged box-carrying incident in which she claims to have injured her back resulted in her subsequent problems for which Dr. Domingue of Louisiana found her totally disabled, in that, Dr. Domingue's opinion was based on an inaccurate history given to him by plaintiff in which she related that her problems had been continuous since the date of the alleged incident. Dr. Domingue's opinion as to causation was based on a continuous history of problems and he stated that he would no longer be able to relate plaintiff's problems to her alleged incident at work if there were intervening periods with normal activities and no back pain. Plaintiff's giving an inaccurate history to Dr. Domingue is yet another example of her lack of credibility.
Based upon these reasons, I respectfully dissent from the majority's decision in this matter and would adopt the Deputy Commissioner's decision in full.
 S/ _____________________ DIANNE C. SELLERS COMMISSIONER